UNITED STATES DISTRICT COURT
for the
District of Arizona

United States of America )
v. )
Christian Kisto Vela a.k.a Christian Lyons, ) Case No. 14-199 M
)
_____ )
Defendant )
)
)

DOA:
4/12/14

CRIMINAL COMPLAINT

I, Robert E. Hawkes, the undersigned complainant in this case, state that the following is true to the best of my knowledge and belief:

Count 1

On or about April 12, 2014, in the District of Arizona, within the confines of the Gila River Indian Community, Indian Country, the defendant, CHRISTIAN KISTO VELA aka CHRISTIAN LYONS, an Indian, with malice aforethought, that is, recklessly and with extreme disregard for human life, did unlawfully cause the death of Mario Flores.

In violation of Title 18, United States Code, Sections 1153 and 1111.

Count 2

On or about April 12, 2014, in the District of Arizona, defendant CHRISTIAN KISTO VELA aka CHRISTIAN LYONS, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in Maricopa County Superior Court, Arizona, on November 19, 2010, for Aggravated Assault, in cause number CR2010-005900001, did knowingly and unlawfully possess a .40 caliber Glock, model

22, which had been shipped and transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

I further state that I am a Deputy Special Agent of the Bureau of Indian Affairs.

This criminal complaint is based on these facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein**

AUTHORIZED BY:  _MK_  AUSA Melissa Karlen

☒ Continued on the attached sheet.

_____
Complainant's signature

Deputy Special Agent Robert E. Hawkes, BIA

Sworn before me, and signed in my presence. _telephonically_ @ 4:57 p.m

Date:  April 12th, 2014

_____
Judge's signature

2

City and state:  Phoenix, Arizona

United States Magistrate Judge Michelle H. Burns

## STATEMENT OF PROBABLE CAUSE

I, Robert E. Hawkes, being duly sworn, depose and state as follows:

## INTRODUCTION AND BACKGROUND INFORMATION

1. I am a Detective with the Gila River Police Department and am a Deputy Special Agent for the Bureau of Indian Affairs (BIA). I have been employed as a Detective for approximately two years and have been investigating violations of federal law, including homicides, assaults, rapes, and controlled substance violations on Indian Reservations for that entire time. Prior to working for the Gila River Police Department, I was employed as a police officer in the State of Arizona for over twelve years.

2. This affidavit is made in support of a Criminal Complaint against CHRISTIAN KISTO VELA aka CHRISTIAN LYONS, an Indian, for violations of Title 18, United States Code, Sections 1153 and 1111, Murder – Second Degree, and Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), Firearms – Unlawful Possession by a Prohibited Possessor. Both offenses were committed within the confines of the GRIC on April 12, 2014. I am familiar with the facts surrounding this investigation. The facts contained in this affidavit are from my own investigation.

## DETAILS OF THE INVESTIGATION

3. On April 12, 2014, police officers with the Gila River Police Department (GRPD) responded to a call reporting a gunshot victim at 986 N. Saint Peters Road, Bapchule AZ, which lies within the exterior boundaries of the Gila River Indian Community, Indian Country, in the District of Arizona.

4.   When officers arrived they located an individual identified as Mario Flores (Flores) who had been shot multiple times. Flores was transported to the Hu HuKam Memorial Hospital where he was pronounced deceased.

5.   At the scene, officers recovered numerous .40 caliber bullet shell casings.

6.   I made contact with Darion Wilson (Wilson), an adult Indian male. Wilson informed me he witnessed the shooting of Flores. Wilson stated he was asleep in his bedroom within the house when the victim, Flores, began banging on his bedroom door waking him up. Flores asked Wilson for help because Flores was in a verbal argument with Pablo Ulloa (Ulloa) in the front yard of the residence. Wilson went out to the front of the house and witnessed a further argument betweenFlores and Ulloa which was eventually separated by VELA.

7.   A black Chevrolet Tahoe with dark rims pulled up in front of the house. Wilson observed a female driver, and a female in the front passenger seat. Flores, Ulloa, and VELA began to get into the back of the Tahoe to leave together. Wilson witnessed VELA shove Flores and pull a handgun out from his (VELA) front waistband. VELA shot Flores four to five times. Flores fell to the ground. VELA stood over Floresand shot him several more times.

8.   Wilson ran into his house, afraid he was going to be shot. Hecalled the police. The black Tahoe and its occupants left the scene.

//

9. Casa Grande Police Department Officer Brian Langeliers located the black Tahoe while conducting his routine patrol. When Officer Langeliers attempted to make contact with the occupants, one passenger, later determined to be VELA, ran from the vehicle. Officer Langeliers chased after VELA. While in foot pursuit Officer Langeliers observed VELA holding something close to his (VELA) waist.

10. VELA was cornered by Casa Grande Police Officers. VELA pulled a handgun from his waistband. Upon verbal orders to drop the gun VELA threw the gun on top of a two story apartment complex building located at 2060 N. Trekell Road.

11. GRPD Detective Garcia responded to the scene and recovered the firearm from the roof, identifying it as a .40 caliber Glock model 22, with an empty magazine located in the gun.

12. Officer Langeliers confirmed the firearm recovered was the firearm VELA possessed and threw onto the roof.

13. Karissa Loring (Loring) and Ulloa, the other passengers in the black Tahoe were also detained.

14. I spoke with Loring at the Casa Grande Police Department main police station. After being advised of her Miranda Rights, Loring initially stated she was not present during the shooting. However, upon finding out Flores was deceased, Loring admitted she was present at the shooting.

15. Loring reported that she was with Kendra Sherfield (Sherfield), who was driving her (Loring) vehicle, a black Tahoe. Sherfield went to pick up VELA at 986 N. Saint Peters Road. When they arrived at the location, Loring saw Ulloa, Flores, and VELA all in the front yard. Loring heard gunshots. She saw VELA and Ulloa enter the back seat of the Tahoe. Loring stated she did not see VELA shoot Flores because she was seated in the front passenger seat facing forward. The shooting was behind her near the rear passenger door. However, Loring was sure VELA shot Flores because of their location to each other.

16. Following the interview, Loring called me and stated she believed VELA shot Flores because Flores may have shot VELA's brother, Carlos Vela before.

17. Loring identified the black SUV as her vehicle and gave consent to search the vehicle along with her cellular phone.

18. I then spoke with Pablo Ulloa at the Casa Grande Police Department main station. Ulloa was advised of his Miranda Rights and agreed to speak with me. Ulloa initially stated he was not near the area and did not witness the shooting. However, upon learning that Flores was deceased, Ulloa admitted that VELA shot Flores multiple times. Ulloa confirmed the shooting occurred in front of the house at 986 N. Saint Peters Road, near the rear passenger side of the Tahoe Flores and VELA had been approaching.

//

19. Ulloa also reported that Carlos Vela had sustained an injury to his hand. Ulloa did not know if it was shrapnel from VELA shooting Flores or a prior incident.

20. Ulloa had a red substance on his right hand which was swabbed for Deoxyribonucleic acid (DNA). Ulloa stated the red substance was blood from Carlos Vela's injury. Ulloa did not know where Carlos Vela was and said he left the group when they filled up for gasoline at the Quick Trip convenience store in Casa Grande, Arizona.

21. I then spoke with VELA at the Casa Grande Police Department main police station. Upon advising VELA of his Miranda Rights VELA asked to have an attorney present. VELA had a red substance on his left palm. A DNA sample was obtained from this red substance.

22. CHRISTIAN KISTO VELA is a registered enrolled member of the Gila River Indian Community.

23. GRPD Sergeant Brian Romer had GRPD dispatch conduct a criminal history check through the Arizona Crime Information Center (ACIC) and National Crime Information Center (NCIC). Records returned showed CHRISTIAN KISTO VELA aka CHRISTIAN LYONS, was convicted for Aggravated Assault, a class 3 Felony under Arizona Revised Statutes which is a crime punishable by more than one year, in the Maricopa County Superior Court, in cause number CR2010-005900001.

24. All firearms manufactured by Glock are done so outside the District of Arizona.

# CONCLUSION

Based on the aforementioned information, your Affiant believes there is a violation of federal law when CHRISTIAN KISTO VELA aka CHRISTIAN LYONS, an Indian, and while on the Gila River Indian Community, Indian country, with malice aforethought, did unlawfully cause the death of Mario Flores. Further, VELA did possess a firearm after being convicted of a felony offense in Maricopa County. All in violation of Title 18 U.S.C. ' ' 1153, 1111, 922(g)(1) and 924(a)(2).

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: <u>April 12, 2014</u>           Respectfully submitted,
TELEPHONICALLY AT 4:57 PM

*[signature]*

Robert E. Hawkes
Deputy Special Agent
Bureau of Indian Affairs

Subscribed and sworn before me this 12th day of April, 2014.

*[signature]*

Honorable Michelle H. Burns
United States Magistrate Judge